FIFTH DIVISION

June 15, 2001

No. 1-00-0908

FRANKIE SWOOPE, )       Appeal from

)    the Circuit Court

Petitioner-Appellant, )     of Cook County.

)

v. ) 

)     No.  99-CH-6373

THE RETIREMENT BOARD OF THE POLICEMEN'S )

ANNUITY AND BENEFIT FUND OF THE CITY OF )

CHICAGO, )        Honorable

)    Robert V. Boharic,

Respondent-Appellee. )     Judge Presiding.

JUSTICE THEIS delivered the opinion of the court:

Frankie Swoope (Frankie) appeals from an order of the circuit court which, on administrative review, affirmed the decision of the Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago (Board) denying her a widow's compensation annuity under section 5-144 of the Illinois Pension Code (Code) (40 ILCS 5/5-144 (West 1998)).  She argues that the Board's decision was against the manifest weight of the evidence and contrary to law.  Frankie did receive a widow's annuity of $1,223.70 a month and now argues that she is entitled to interest, pursuant to section 2 of the Interest Act (815 ILCS 205/2 (West 1998)), on the difference between the annuity awarded to her and the widow's compensation annuity to which she is entitled.  For the following reasons, we affirm and remand to the Board with directions.

The facts are undisputed.  Thomas Swoope (Thomas) was a Chicago police officer, appointed on February 1, 1983.  On April 24, 1990, Thomas was injured in a car accident when he swerved to avoid a pedestrian while responding to a call of a disturbance in the area.  He sustained cervical injuries with complaints of neck pain and headaches.  After the accident, Thomas applied for duty disability benefits.  The Board denied his claim, finding that his injuries were not the result of the performance of an act of duty and awarded him only ordinary disability benefits.  On administrative review, the circuit court reversed the finding of the Board, found that Thomas was on duty when the accident occurred, and remanded the case back to the Board for an award of duty disability.  Once he received duty disability benefits, Thomas was examined several times by a Board physician, pursuant to section 5-156 of the Code, to determine the status of his disability and whether he could return to work.  40 ILCS 5/5-156 (West 1998).  Thomas did not return to work as a policeman after the accident and continued to receive duty disability payments until his death from a heart attack on March 5, 1998.

After Thomas' death, Frankie received a widow's annuity of $1,223.70 per month and death benefits of $10,400.  Frankie then applied for a widow's compensation annuity pursuant to section 5-144 of the Code, which would entitle her to $3,276.75 a month and an additional $1,600 in death benefits.  40 ILCS 5/5-144 (West 1998).  The Board held an evidentiary hearing on her request for a compensation annuity where it considered several medical reports regarding Thomas' disability and his death certificate along with Frankie's testimony.  These doctor's reports, from November 1991 through June 1996, found Thomas to have headaches, neck pain, and degenerative disc disease in his spine, aggravated by arthritis.  The reports described him as disabled and "unable to perform unrestricted police duty."  The last report in June 1996 found his condition unchanged, meaning that he remained disabled and was unable to perform the duties for which he had been originally hired by the police department.  Frankie testified at the hearing that she was Thomas' widow, they had one daughter and lived in Chicago at the time of Thomas' death.  She did not offer medical testimony or evidence concerning Thomas' physical condition or ability to return to work after June 1996.

In its decision, the Board stated that "[t]he Board is aware, many officers who after receiving a disability benefit for an extensive period have ultimately returned to work with the [Chicago Police Department]."  The Board found that Frankie had the burden of proof under section 5-144 to establish her entitlement to a widow's compensation annuity and she failed to meet that burden.  The Board then denied Frankie a widow's compensation annuity.  Frankie filed a petition for administrative review in the circuit court.  After a hearing, the circuit court affirmed the Board's decision.  Frankie then filed this timely appeal.

An administrative agency's findings of fact are deemed 
prima facie
 true and correct.  
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 204, 692 N.E.2d 295, 302 (1998); 735 ILCS 5/3-110 (West 1998).  Determinations as to weight of the evidence and credibility of witnesses are matters left to the agency and will not be disturbed on review unless they are against the manifest weight of the evidence.  
Terrano v. Retirement Board of the Policemen's Annuity & Benefit Fund
, 315 Ill. App. 3d 270, 274, 733 N.E.2d 905, 908 (2000).  A decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident.  
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 88, 606 N.E.2d 1111, 1117 (1992).  If the record contains any evidence to support the agency's decision, it should be affirmed.  
Abrahamson
, 153 Ill. 2d at 88, 606 N.E.2d at 1117.  

An administrative agency's conclusions of law, however, are afforded less deference and are reviewed on a 
de novo
 basis.  
City of Belvidere
, 181 Ill. 2d at 205, 692 N.E.2d at 302.  When the agency's determination involves a mixed question of fact and law, the applicable standard of review is the clearly erroneous standard, which falls between a manifest weight of the evidence standard and 
de novo
 review, so as to give some deference to the agency's experience and expertise.  
City of Belvidere
, 181 Ill. 2d at 205, 692 N.E.2d at 302.  
An agency is presumed to make informed judgments based on its experience and expertise and, thus, substantial deference is given to its interpretation of a statute.  
Stillo v. State Retirement Systems
, 305 Ill. App. 3d 1003, 1007, 714 N.E.2d 11, 14-15 (1999).  We review the administrative agency's decision, not the decision of the circuit court.  
Waliczek v. Retirement Board of the Firemen's Annuity & Benefit Fund
, 318 Ill. App. 3d 32, 35, 741 N.E.2d 272, 275 (2000).  

Frankie first argues that the Board's decision was against the manifest weight of the evidence and its interpretation of the statute at issue was contrary to law.  The statute governing widow's compensation and supplemental annuities details the amount and length of these annuities and also states:  "(c) Neither compensation nor supplemental annuity shall be paid unless the death of the policeman was a direct result of the injury [occurring in the performance of an act of duty], or the injury was of such character as to prevent him from subsequently resuming service as a policeman ***."  40 ILCS 5/5-144(c) (West 1998).  

Both parties agree that Frankie must establish either of the two conditions listed in section 5-144(c) in order to receive a compensation annuity.  Further, it is undisputed that Thomas' death was not a direct result of the injury he sustained in the performance of an act of duty.  The dispute, therefore, involves the interpretation of the second phrase, "the injury was of such character as to prevent him from subsequently resuming service as a policeman."  Neither party has cited, nor could we find, any cases addressing this exact issue.  

Frankie argues that, when a police officer dies while receiving duty disability benefits and has not returned to work since the injury, the widow is automatically entitled to a compensation annuity.  In that situation, Frankie contends, the fact that the police officer was disabled at the time of his death proves that his injuries were of such a character as to prevent him from subsequently resuming service as a policeman.  She asserts that the widow's burden of proof as to section 5-144(c) is automatically satisfied when the officer dies while receiving disability benefits.

The Board responds that Frankie's interpretation would render the term "subsequently" meaningless and lead to an absurd result.  Therefore, the Board interprets the phrase to mean that, when an officer's death is from an injury other than that received in the performance of an act of duty, the widow must show that, absent death, the officer would not have been able to subsequently resume service as a police officer.  

The primary rule of statutory construction is to ascertain and effectuate the legislature's intent.  
Lulay v. Lulay
, 193 Ill. 2d 455, 466, 739 N.E.2d 521, 527 (2000).  The best evidence of legislative intent is the language in the statute itself, which must be given its plain and ordinary meaning.  
Lulay
, 193 Ill. 2d at 466, 739 N.E.2d at 527.  
To do so, words and phrases should not be construed in isolation, but must be interpreted in light of other relevant provisions of the statute.  
Michigan Avenue National Bank v. County of Cook
, 191 Ill. 2d 493, 504, 732 N.E.2d 528, 535 (2000).  See also 
Glynn v. Retirement Board of the Policemen's Annuity & Benefit Fund
, 263 Ill. App. 3d 590, 593, 635 N.E.2d 823, 826 (1994). 

In interpreting section 5-144(c), we first construe that section within the context of the other provisions in the Code.  At least 17 provisions exclusively concern the determination and amount of widows' annuities based on age, length of service or retirement of the officer, etc.  Through these provisions, the Code specifically provides for, and intends to benefit, widows.  40 ILCS 5/5-101 (West 1998).  Section 5-144 is entitled, in part, "[d]eath from injury in the performance of acts of duty" and creates additional annuities, compensation and supplemental, for widows of officers seriously injured or killed in the line of duty.  40 ILCS 5/5-144 (West 1998).  This section is intended to provide extra compensation, above the regular annuity determined in the previous sections, to this select group of widows.

Moreover, section 5-144(a) specifically refers to widows of policemen whose death "results from injury incurred in the performance of an act or acts of duty" and those whose death "occurs *** due to injury incurred in the performance of an act of duty."  40 ILCS 5-144(a) (West 1998).  From the title and the language in section 5-144(a), we find that the legislature clearly intended only widows whose husbands died as a direct result of injuries sustained in the performance of acts of duty to benefit from compensation and supplemental annuities.  Section 5-144(c), then, is a narrow expansion of this section, allowing widows of officers whose injuries were of such character as to prevent them from subsequently resuming service as policemen to also receive this extra compensation. 

When interpreting the phrase at issue, we look to the plain and ordinary meaning of the terms.  
Lulay
, 193 Ill. 2d at 466, 739 N.E.2d at 527.  The plain and ordinary meaning of the term "subsequently" is "following in time: coming or being later than something else."  Webster's Third New International Dictionary 2278 (1986).  Thus, the provision refers to an injury incurred in the performance of an act of duty which prevents the officer from resuming service as a policeman subsequent to, or following, that injury.  If, at anytime after the injury, the officer can or could possibly resume his duties as a policeman, his widow is excluded from receiving compensation or supplemental annuities.  Because the statute does not define an ending point to this time period, we interpret the phrase to mean that the injury was so severe, and of such a character, as to prevent the officer from ever resuming service as a policeman.  Thus, it is the officer's injury, and not his death, which establishes whether the officer would be able to subsequently, and at some point, resume his duties with the police department.  We therefore reject Frankie's interpretation of the statute.
(footnote: 1)  

Therefore, we hold that, under the second condition of section 5-144(c), a widow must establish with medical evidence and testimony that her husband's injury, but for his death, would have prevented him from subsequently, or ever, resuming service with the police department.  We remand this case to the Board to allow Frankie an evidentiary hearing consistent with this opinion.

For the foregoing reasons, we affirm the circuit court's order affirming the Board's decision, but remand this case to the Board.

Affirmed and remanded with directions.

QUINN, P.J., and GREIMAN, J., concur.

FOOTNOTES
1:
¹
While Frankie further argues that this case is similar to a previous case before the Board concerning another widow, we have no information in the record regarding that case and therefore cannot address Frankie's argument.